KNISKERN, Admr., et al., Appellants,

v.

TOWNSHIP OF SOMERFORD et al., Appellees.

KNISKERN, Admr., et al., Appellants,

v.

The STATE of Ohio, Ohio Department of Transportation, et al., Appellees.

[Cite as *Kniskern v. Somerford Twp.* (1996), 112 Ohio App.3d 189.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

Nos. 95API09–1164, 95API09–1169.

Decided June 28, 1996.

*Donald Weisberger,* for appellants Kniskerns and Cavalieres.

*David J. Chernosky,* for appellant Allstate Insurance Company.

*Betty D. Montgomery,* Attorney General, *Eric A. Walker* and *Susan M. Sullivan,* Assistant Attorney Generals, for appellee Ohio Department of Transportation.

*Reminger & Reminger Co., L.P.A.,* and *Nick C. Tomino,* for appellee Somerford Township.

*Berlon & Timmel* and *Patrick S. Corrigan,* for appellee Madison County Board of Commissioners.

*Dyson, Schmidlin & Foulds Co., L.P.A.,* and *Robert J. Foulds,* for appellee Western Reserve Mutual Casualty Co.

*Stewart Mandel,* for appellee Nino Cavaliere.

_____

PETREE, Presiding Judge.

Plaintiffs, Guy, Maria and Joanna Cavaliere, Allstate Insurance Company and James Kniskern, Administrator of the Estates of Cynthia Ann Cavaliere, Jennifer Kniskern and Felina Cavaliere, appeal from a judgment of the Court of Claims of Ohio in favor of defendants, Ohio Department of Transportation, Madison County Board of Commissioners, Township of Somerford and Western Reserve Mutual Casualty Company. Plaintiffs set forth the following assignment of error:

"I. The trial court erred prejudicially, in granting the separate summary judgment motions of the Ohio Department of Transportation (ODOT), the County of Madison, the Township of Somerford, and the Western Reserve Mutual Casualty Insurance Co. (WRMC) and remanding the case back to Cuyahoga County Common Pleas Court, contrary to law, inter alia, by usurping the function of the trier of fact and denying plaintiffs their due process right to a trial of their case on the merits.

"A. The trial court erred prejudicially, in finding the driver the sole proximate cause of the accident, and that ODOT had immunity, when plaintiffs' expert['s] uncontradicted affidavits and deposition evidence established—that had the Deer Creek accident guardrail been built in accordance with the official standard design drawings adopted by ODOT prior to the project's approval, and/or in accordance with ODOT's manifest overt guardrail design standard, as evidenced by ODOT's nearby guardrail it built at Beaver Creek in the same time frame— the driver having driven into the accident guardrail would have been redirected onto the paved portion of the roadway without serious injury—instead of onto the guardrail, and off the bridge's wing wall and ODOT's man made wash bank,

where his van crashed into the far embankment of Deer Creek, resulting in multiple deaths and serious injuries to the passengers and driver.

"B. The trial court erred prejudicially, in making its summary judgment rulings, by misapprehending and wrongfully finding material and relevant parts of the affidavits of plaintiffs' expert, a nonparty, repudiated—when the court improperly weighed his deposition testimony on cross-examination against that expert's affidavits—when that issue is reserved for the trier of fact, and goes to the weight of plaintiffs' expert's testimony, not its substance.

"C. The trial court erred prejudicially, when ruling upon all of the summary judgment motions, in failing to find, that the evidence submitted by all the defendants, failed to rebut plaintiffs' evidence and inference of negligence under the evidentiary rule of 'res ipsa loquitur' applicable to both the driver, Nino Cavaliere, and the other named joint tortfeasors to whom the doctrine applies because of their nondelegable duty—namely, that the accident was proximately caused by defendants breaching their legal duty to keep Interstate Highway I–70 at the accident site, reasonably safe and free from nuisance for the motoring public, including the plaintiffs, thereby foreclosing defendants right to their summary judgments.

"D. The trial court erred prejudicially in failing to find that plaintiffs' admissible evidentiary materials were legally sufficient to create genuine issues of material fact requiring a trial on the merits and a denial of the summary judgment motions.

"E. The trial court erred prejudicially, by granting defendants summary judgment on the issues of nuisance and absolute nuisance, created and maintained for years by ODOT at the accident site, with a conscious disregard for the rights and safety of other persons, that had a great probability of causing substantial harm, when those evidentiary materials were before the court and substantiated plaintiffs' claims on these issues, entitling plaintiffs to a trial on the merits.

"F. The trial court erred prejudicially in failing to find, that the definition of 'roadway' as interpreted by Ohio law includes the wing wall of the bridge abutment especially in regard to Ohio's interstate system of highways, such as I–70, at the accident site, and includes the definition of 'highway' inter alia, rights-of-way, bridges, guardrails and protective structures (e.g. clear zone) as defined in 23 U.S.C.A. § 103 & § 101 referenced in R.C. 5516.01—and that ODOT failed over a substantial period of time, in its duty to keep it reasonably safe for the motoring public including plaintiffs; and to which Madison County and Somerford Township each, also have failed, in both their statutory duty of keeping the I–70 Highway accident site in their political subdivision, as defined herein, free

from nuisance, and failed in their statutory duty/authority to seek the approval of ODOT when they had a reasonable opportunity to do so.

"G. The trial court erred prejudicially, in failing to find that the Probate Court of Trumbull County has limited jurisdiction to adjudicate and declare entitlement to wrongful death proceeds of a liability insurance policy in an interpleader/declaratory judgment action, and has no general jurisdiction to adjudicate rights and liabilities of both the living injured and dead insureds, under the underinsured motorist, medical and accidental death coverages of that policy that were not in issue before that court—and consequently, the doctrine of *res judicata* is inapplicable as a basis for summary judgment in favor of Western Reserve Mutual Casualty Co."

On July 13, 1992, a vehicle operated by Nino Cavaliere left the paved portion of the roadway on Interstate 70 in Somerford Township, Madison County, Ohio, and crashed into an embankment alongside Deer Creek. Three of the five passengers in the vehicle, Cynthia Cavaliere, Jennifer Kniskern and Felina Cavaliere, were killed; Nino Cavaliere and the other two passengers, Joanna and Maria Cavaliere, sustained personal injuries. While in the hospital recovering from his injuries Nino Cavaliere reportedly told police that he had fallen asleep at the wheel.

Several legal actions arose out of this accident. On February 2, 1993, proceedings were brought in the Trumbull County Probate Court to settle the estates of Felina and Cynthia Cavaliere. On March 1, 1993, defendant Western Reserve Mutual Insurance Company ("Western Reserve") filed an interpleader action in that case seeking the resolution of conflicting claims made upon proceeds of an insurance policy held by the company for its insured Nino Cavaliere. On October 25, 1995, the Trumbull County Probate Court issued an order limiting Western Reserve's liability under the Cavaliere policy to $100,000. No appeal was taken from the order of the Trumbull County Probate Court.

Two other actions arising out of the accident were filed in the Cuyahoga County Court of Common Pleas, and a third was filed in the Court of Claims of Ohio. Ultimately, the Cuyahoga County actions were removed to the Court of Claims; thereafter, the case proceeded in the Court of Claims as two separate, but related actions.

A motion for summary judgment was filed by each of the defendants. The Court of Claims granted the motions for summary judgment in two separate decisions issued August 15, 1995; judgment entries were also issued on August 15, 1995. Plaintiffs appeal to this court from the judgments of the Court of Claims of Ohio.

The crux of plaintiffs' assignment of error designated "I–A" through "I–F" is that the Court of Claims erred when it granted summary judgment in favor of defendants. Accordingly, we will consider the portion of plaintiffs' assignment of error designated "I–A" through "I–F" jointly.

Under Civ.R. 56, summary judgment is proper when (1) no genuine issues as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Welco Industries, Inc. v. Applied Cos.* (1993), 67 Ohio St.3d 344, 617 N.E.2d 1129; *Leibreich v. A.J. Refrigeration, Inc.* (1993), 67 Ohio St.3d 266, 617 N.E.2d 1068.

Plaintiffs' claims against the Ohio Department of Transportation ("ODOT") are based on the theory that ODOT negligently designed the guardrail alongside Interstate 70 at the Deer Creek Bridge. More specifically, plaintiffs claim that the guardrail was defective in that it did not connect to the bridge abutment, it was not long enough, and it did not incorporate a "flared end treatment" with an eighteen-foot setback.

■ It has been held that ODOT has a general duty to maintain its highways in a reasonably safe condition. *Knickel v. Dept. of Transp.* (1976), 49 Ohio App.2d 335, 3 O.O.3d 413, 361 N.E.2d 486. However, ODOT is not an insurer of the safety of its highways. See *Rhodus v. Ohio Dept. of Transp.* (1990), 67 Ohio App.3d 723, 588 N.E.2d 864. In order for plaintiffs to prevail under a theory of negligence, they must establish that ODOT owed them a duty of care, that ODOT breached that duty, and that plaintiffs suffered damages as a proximate result thereof. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 21 O.O.3d 177, 423 N.E.2d 467.

■ With respect to plaintiffs' contention that the guardrail was defective because it did not attach to the bridge, plaintiffs' expert admitted in his deposition testimony that this particular defect was not the proximate cause of the accident. Consequently, plaintiffs cannot possibly prevail upon this theory of a defect.

■ Similarly, with respect to plaintiffs' claim that the guardrail was too short, plaintiffs' expert acknowledged that his opinion regarding this specific defect was based on engineering standards which were not promulgated until after the project was completed. We agree with the Court of Claims that ODOT has no duty to upgrade a previously constructed guardrail as technology develops. See *Bowman v. Ohio Dept. of Transp.* (Aug. 30, 1984), Franklin App. No.

83AP–516, unreported, 1984 WL 5878. Consequently, plaintiffs cannot possibly prevail upon this theory of a defect.

■ Finally, with regard to plaintiffs' claim that the guardrail constructed at the Deer Creek Bridge should have incorporated a flared end treatment with an eighteen-foot setback, plaintiffs' expert conceded that this particular design feature was not incorporated into ODOT regulations until February 15, 1968, after the original plans were drafted and just months before construction was to begin. Plaintiffs' expert acknowledged that the original plans for the project, including the design of the guardrail, complied with ODOT regulations in effect at the time the project plans were drawn up.

Nevertheless, plaintiffs' expert opined that ODOT was negligent for failing to incorporate the more advanced design when it constructed the guardrail. Plaintiffs also produced evidence that the project plans which were ultimately followed in constructing of the Deer Creek Bridge project included some new design features called for in the standards promulgated on February 15, 1968. Plaintiffs contend that this evidence supports the opinion of their expert. Plaintiffs also produced evidence that a similar project in the area of Blacklick Creek contained a guardrail with a more advanced design.

In *Garland v. Ohio Dept. of Transp.* (1990), 48 Ohio St.3d 10, 548 N.E.2d 233, the Supreme Court of Ohio noted that the waiver of immunity under R.C. Chapter 2743 is not absolute. *Id.* at 11, 548 N.E.2d at 234–235. The court held that immunity was preserved for those acts or omissions constituting an executive or planning function, involving the making of a basic policy decision, and requiring a high degree of official judgment or discretion. *Id.* at 13, 548 N.E.2d at 236–237. In *Garland,* the court held that ODOT's decision as to which type of traffic control device to install at a particular intersection was the type of discretionary decision which deserved the protection of sovereign immunity. *Id.*

In this case, we hold that ODOT's decision not to redraft its plans to incorporate a new guardrail design was the type of discretionary decision which is entitled to the protection of sovereign immunity. In our view, the fact that ODOT chose to incorporate some changes set forth in the new standards, but not others, proves that ODOT engineers were exercising their independent judgment in modifying the project plans in the months prior to construction. Indeed, plaintiffs' expert testified that it was ODOT engineers who had to make the decision whether to incorporate later-adopted standards into the project plans. Similarly, the fact that the new design standards were incorporated into the Blacklick Creek project establishes only that ODOT followed its current standards in designing and constructing a later project. As stated above, there is no question that the new design standards were not in effect when the Deer Creek Bridge was originally designed.

In the final analysis, even if we were to agree with plaintiffs that ODOT made a poor decision when it failed to incorporate the new design into the project plans at the Deer Creek Bridge, ODOT is protected from liability arising from this decision under the doctrine of sovereign immunity. *Garland, supra.* Consequently, the Court of Claims did not err when it granted summary judgment in favor of ODOT.

Plaintiffs' claims against Madison County and Somerford Township are predicated upon the theory that the guardrail constructed at the Deer Creek Bridge was a "nuisance." R.C. 2744.02(B)(3) provides:

"Political subdivisions are liable for injury, death, or loss to persons or property caused by their failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivisions open, in repair, and free from nuisance, except that it is a full defense to such liability, when a bridge within a municipal corporation is involved, that the municipal corporation does not have the responsibility for maintaining or inspecting the bridge."

Plaintiffs argue that the county and/or township should have reconstructed the guardrail to conform to current design standards, and that the failure to do so resulted in a nuisance. The Court of Claims determined that because the guardrail was not a condition upon the roadway, it could not be considered a nuisance as a matter of law, even if it were negligently designed. In so holding, the Court of Claims relied on this court's decision in *Harris v. Ohio Dept. of Transp.* (1992), 83 Ohio App.3d 125, 614 N.E.2d 779, wherein this court held that the existence of an allegedly hazardous embankment near the median strip of a state highway could not be considered a nuisance, as a matter of law, since it was not a condition in the right-of-way which directly jeopardizes the safety of the usual and ordinary traffic on the roadway. *Id.* at 130, 614 N.E.2d at 782–783.

In *Gonzalez v. Cuyahoga Falls* (Nov. 3, 1993), Summit App. No. 15891, unreported, 1993 WL 468298, the Summit County Court of Appeals applied *Harris, supra,* in a case involving an automobile accident allegedly caused by a design defect in a guardrail. Ironically, the plaintiff in the *Gonzalez* case claimed that the flared-end treatment incorporated in the design of the guardrail was defective in that it permitted the vehicle in which plaintiff was traveling to become impaled, causing her to suffer a serious injury. The court specifically held that a guardrail on the berm of a highway was not a nuisance under R.C. 2744.02, because it was not on the regularly traveled portion of the road and did not directly affect the highway safety for the regular and ordinary course of traffic.

■ In this case, there is no doubt that the guardrail was located outside the regularly traveled portion of the road and that it did not affect the safety of the highway for regular and ordinary course of traffic. As stated above, the guardrail was originally designed in accordance with ODOT regulations and was constructed in accordance with its design. Moreover, there is no evidence that the guardrail had fallen into a state of disrepair. Thus, applying *Harris* and *Gonzalez* herein, and given the nature of the alleged defect in the guardrail, we hold that the guardrail was not a nuisance under R.C. 2744.02(B)(3), as a matter of law.

■■ Plaintiffs next contend that the Court of Claims erred by refusing to apply the doctrine of *res ipsa loquitur* to impose liability upon defendants. The doctrine of *res ipsa loquitur* is not a theory of tort liability; rather, it is a doctrine of evidence which permits a plaintiff to prove negligence circumstantially upon a showing that the instrumentality which caused the harm was in the exclusive control of the defendant and that the event which caused the harm was not the type of event that would normally occur in the absence of defendant's negligence. *Wiley v. Gibson* (1990), 70 Ohio App.3d 463, 465, 591 N.E.2d 382, 384. Even if it could be inferred that either the township or the county had exclusive control of the guardrail, liability cannot be imposed upon either defendant under the doctrine of *res ipsa loquitur*, since neither had any control over the Cavaliere vehicle. Accordingly, the Court of Claims did not err when it refused to apply the doctrine of *res ipsa loquitur* herein.

Finally, to the extent that plaintiffs contend that liability may be imposed upon Madison County and/or Somerford Township under various other sections of the Revised Code, we note that R.C. 2744.02(B)(5) provides:

"In addition to the circumstances described in divisions (B)(1) to (4) of this section, a political subdivision is liable for injury, death, or loss to persons or property when liability is expressly imposed upon the political subdivision by a section of the Revised Code, including, but not limited to, sections 2743.02 and 5591.37 of the Revised Code. *Liability shall not be construed to exist under another section of the Revised Code merely because a responsibility is imposed upon a political subdivision* or because of general authorization that a political subdivision may sue and be sued." (Emphasis added.)

■ Although plaintiffs claim that other sections of the Revised Code place a duty upon the county and/or township to reconstruct the Deer Creek Bridge, plaintiffs have not identified any section of the Revised Code which even arguably imposes liability upon either the county or township for harm caused by an allegedly defective guardrail constructed and maintained by ODOT. Thus, there is no legal basis for imposing liability upon either of these defendants under any other section of the Revised Code. See R.C. 2744.02(B)(5).

In short, the Court of Claims did not err by granting summary judgment in favor of defendants. The portion of plaintiffs' assignment of error designated "I–A through I–F" is overruled.

 In the portion of plaintiffs' assignment of error designated "I–G," plaintiffs contend that the Court of Claims erred when it determined that the prior judgment of the Trumbull County Probate Court effectively limited Western Reserve's liability to $100,000. Under the doctrine of *res judicata*, a judgment or decree of a court possessing competent jurisdiction shall be final as to the subject matter thereby determined. See *Natl. Amusements, Inc. v. Springdale* (1990), 53 Ohio St.3d 60, 62, 558 N.E.2d 1178, 1180; *Rogers v. Whitehall* (1986), 25 Ohio St.3d 67, 69, 25 OBR 89, 90–91, 494 N.E.2d 1387, 1388–1389. *Res judicata* operates to prevent repeated attacks on a final judgment and applies not only to what was determined but, also, to every question which might properly have been litigated. *State ex. rel. White v. Franklin Cty. Bd. of Elections* (1992), 65 Ohio St.3d 45, 600 N.E.2d 656. On October 25, 1995, the Trumbull County Probate Court issued the following order:

"It is further ORDERED that upon deposit of the $100,000.00 with this Court, Western Reserve Mutual Casualty Company's obligation to defend and indemnify Nino Cavaliere under the Policy shall be deemed satisfied in full and that it be released and discharged from any and all further obligations under the Policy, including without limitation liability for any damages or claims asserted or which could be asserted by any and all of the named Defendants, their personal representatives or guardians or their subrogees."

 Plaintiffs contend that *res judicata* does not apply herein, because the probate court did not have subject matter jurisdiction to determine Western Reserve's total liability under the policy. We disagree.

R.C. 2101.24(C) states:

"The probate court has plenary power at law and in equity to dispose fully of any matter that is properly before the court, unless the power is expressly otherwise limited or denied by a section of the Revised Code."

Additionally, R.C. 2125.02(C) provides:

"A personal representative appointed in this state, with the consent of the court making the appointment and at any time before or after the commencement of an action for wrongful death, may settle with the defendant the amount to be paid."

In conjunction with this interpleader action, Western Reserve surrendered what it claimed were the policy limits of Nino Cavaliere's auto insurance policy in an effort to settle the claims against the policy. In making the determination whether the settlement was fair and equitable, the probate court was required to determine the limits of liability under the policy. See *Burris v. Grange Mut. Cos.*

(1989), 46 Ohio St.3d 84, 94, 545 N.E.2d 83, 92–93 (reversed on other grounds by *Savoie v. Grange Mut. Ins. Co.* [1993], 67 Ohio St.3d 500, 620 N.E.2d 809). Thus, the Trumbull County Probate Court order limiting Western Reserve's liability under the policy was a valid exercise of that court's subject-matter jurisdiction.

The language of the Trumbull County Probate Court order is clearly broad enough to encompass plaintiffs' claims against Nino Cavaliere's auto insurance policy with Western Reserve. Accordingly, to the extent that plaintiffs' present action seeks to make a further claim upon the policy, that action is barred by the doctrine of *res judicata.* The portion of plaintiffs' assignment of error designated "I–G" is overruled.

Having overruled all parts of plaintiffs' assignment of error, we hereby affirm the judgment of the Court of Claims of Ohio.

*Judgment affirmed.*

DESHLER and REILLY, JJ., concur.

ARCHER E. REILLY, J., retired, of the Tenth Appellate District, sitting by assignment.